June 8, 1908.

———————o———————

No. 4435.

(Court of Appeal, Parish of Orleans.)

BRIERRE, PERRY & CO., LTD., VS. R. C. STONE MILLING CO.

1.  Defendant exhibited to the plaintiff certain samples of flour representing the same to be "hard wheat clear," and the sale of the flour was confirmed in a written instrument stipulating the flour to be "hard wheat clear," a grade of flour shown by the record to be well known to the trade. When delivered, the flour, though comforming to the samples exhibited, was found to be of a low ordinary grade, unfit for the use to which "hard wheat clear" flour may be put.

HELD:  Though samples are exhibited before sale, yet when the grade and kind of the article are embodied in a written con-

241

tract, the stipulation in such contract will control, and the question of sample is eliminated as an issue.

2. The issues of fact involved are resolved in favor of plaintiff.

Appeal from Civil District Court, Division "C."

Boatner & Manion, for Plaintiff and Appellee.

W. L. Hughes, for Defendant and Appellant.

ESTOPINAL, J. The plaintiff claims of the defendant one thousand three hundred and eighty dollars ($1,380.00), averring that in the early part of the month of May, 1907, it purchased from the defendant 690 barrels of *hard wheat clear flour*, at the price of two dollars and seventy cents ($2.70) a barrel, less ten (10) cents a barrel commission, making the net price two dollars and sixty cents ($2.60) a barrel; that the flour was to be shipped from defendant's establishment in the State of Missouri, and delivered to plaintiff in this city during the month of May, 1907; that defendant shipped said 690 barrels of flour, and in accordance with the terms stipulated between the buyer and seller, plaintiff was compelled to pay the draft drawn on it by defendant, amounting to one thousand seven hundred and ninety-four dollars ($1,794.00), before it could obtain delivery of the flour from the carrier; that when examined by the plaintiff, the flour, instead of being of the grade and quality stipulated, i. e., "hard wheat clear flour," was found to be of a low and irregular grade of soft wheat flour.

Plaintiff further avers that the price in the city of New Orleans of flour of the grade, kind and quality stipulated in the contract at the time the same was delivered and at the time this suit was filed, was four dollars ($4.00) a barrel, and that it could and would have resold the flour at said price had the flour come up to contract grade, and would have made profits aggregating nine hundred and sixty-six dollars ($966.00) ; that the market price and value in this city of the flour actually delivered by defendants was not more than two dollars ($2.00) a barrel, and that it will realize from the sale of said flour, at the rate of $2.00 a barrel, the sum of one thousand three hundred and eighty dollars ($1,380.00), and that of the money paid the defendants, viz: One thousand seven hundred and ninety-four dollars ($1,794.00), it has lost at least the sum of four hundred and fourteen dollars ($414.00).

Plaintiff prayed for and obtained a writ of attachment on certain property belonging to defendant, the latter being non-residents.

Defendant tenders the general issue, but admits the sale by it to the plantiff of 690 barrels of flour at the price of two dollars and seventy cents ($2.70), less ten cents per barrel commission, and that it was fully paid therefor by plaintiff.

Defendant avers further, that the flour sold by it to plaintiff was a grade of "hard wheat clear flour," and that before selling same to plaintiff, it submitted, through its agent, a sample of the flour stipulated for in the agreement, to-wit: "Hard wheat clear flour," and that said sample submitted to plaintiff was taken from the lot of flour subsequently shipped to plaintiff, all meeting with the latter's approval.

Judgment below was for plaintiff for six hundred and twenty-five dollars and forty-seven cents ($625.47), and maintaining the attachment, from which judgment defendant has taken this appeal.

An answer to the appeal by the plaintiff prays that the judgment be amended by increasing the sum to one thousand three hundred and eighty dollars ($1,380.00), the sum sued for.

The established proof in the record is, that the plaintiff was shown samples by one McDonald, an agent of defendant's who represented said samples to be that of "hard wheat clear flour," and on these representations by said agent of defendant, the plaintiff entered into a written contract with defendant to purchase 690 barrels of flour as per samples exhibited by McDonald, their agent.

This contract, drawn by the plaintiff, recites:

"We confirm sale to you as follows: 690 bbls, H. W. Clear at $2.70, less 10 per cent comn. per bbl."

Defendant's counsel earnestly urges that this contract amounted to a confirmation of sale which was made by sample purely, and that since no variance has been shown between the sample and the flour shipped to and received by plaintiff, that the latter is without right to now complain. We have examined this record carefully and thoroughly. There are both questions of fact and of law involved.

From our appreciation of the testimony it is clear to our mind that the term "hard wheat clear" flour is a term well known and recognized in the trade, and said grade is known to the

trade as being such a quality or grade of flour susceptible of use in making bread.

The preponderance of the evidence shows that bakers understand "clear" flour to mean a flour in good condition and that will work or make bread. Reputable witnesses who testified as experts in this case, and who are apparently without interest in the matter, testify that the flour sold by defendants might do for "dusting."

Defendants urge that they sold the flour for what it was worth per sample, and did not pretend that this flour would make bread. This may be very true, and had the transaction been complete and the sale consummated simply on the sample, it may be that the defendant would be without recourse, but unfortunately for the plaintiff, whether because he was impelled so to do by the price he was being paid for his flour, or some other reason, it entered into a written contract to bind or confirm the sale made by the agent, and this contract designated the goods sold as "Hard Wheat Clear" flour.

Though the evidence shows the flour to be "hard wheat," its quality as being "clear" is not supported by the evidence, nor does it appear that its quality as hard wheat came up to the standard of such grade as understood by the trade.

We are advised that in the conversion of wheat into flour, three grades of flour are made, to-wit: "patents," "clear" and "low grade." "Patents" constitute the best that can be gotten out of the wheat and of what remains, or residuum of such wheat is obtained the "clear" and low grade." It follows that the lower the "patent," the higher or better the "clear." Defendant's contention is: That it made a specialty of "patents," turning out an 85 per cent "patent," and that a residuum of 15 per cent was left, from which was obtained the "clear" and "low grade," three per cent of the 15 per cent going into the "low grade," leaving therefore only 12 per cent to the "clear" flour.

Defendant argues that, it being well known to the plaintiffs that it (defendant) made an eighty-five per cent "patent," they were charged with knowledge that the "clear" must come from a residuum of 15 per cent only. We do not think this to be a fair inference, nor that the plaintiffs should be charged with such knowledge.

Ordinarily, it is found that dealers in some particular line of

goods are experts, and know every detail and method of manufacture, but it does not follow that because of their ignorance they should be imposed upon and made to suffer for such ignorance.

True, plaintiff had dealt with the defendant company, buying the "patents" of the latter, but never before this transaction had it bought the defendant's "clear."

A member of the plaintiff firm, when shown samples and told by defendant's agent that these samples were of "hard wheat clear," could not tell from such samples whether it was "clear" from a 60 per cent "patent" or an 85 per cent "patent," the defendant's agent not vouchsafing any information in that particular when exhibiting the samples and making the trade.

Under the circumstances, it is perfectly evident that the plaintiff reasonably expected that the "hard wheat clear," which was being sold, was of the kind, grade and character known to the trade and susceptible of use in a fair proportion with "patents" in the making of bread.

There is an entire absence of proof in this record that plaintiff was informed by defendant's agent of the character of this flour, or how it should be used, and what it would do.

Defendant undertook to show by one of its salesmen that certain bakers to whom the plaintiff has sold portions of the flour purchased from defendant had been told by said salesmen what the flour really was, and in what way and proportion it could be used, but the Judge *a quo* properly sustained the objection of irrelevancy leveled at the testimony, holding that these representations could have no force unless shown to have been made to the plaintiff.

A Mr. McDonald, manager of the defendant company's plant, and who sold the flour to the plaintiffs, testified that members of the plaintiff firm examined the flour in his presence and compared the sample with another flour which they had, and asked his (McDonald's) opinion about the flour.

McDonald was asked by defendant's counsel:

Q.   What did you say to them?

A.   Well, I said: I don't know; I don't know how that mill makes their flour. I said: "Mine is good, ordinary clear flour." They said: "Will it do the same work as this flour?" I said: "I can't answer that."

These answers are not, in our opinion, such as would evidence

245

a desire on the part of defendant's manager to be frank, clear and candid in reference to the grade of the flour sold plaintiff, and the use to which it might be put.

McDonald says he has been engaged in the flour business for twenty-one years, having risen from sweeper to the position of manager, and is familiar with every kind of flour made out of soft wheat and hard wheat in the United States; that he is a recognized expert, and has been frequently employed to examine and pass judgment on flours to determine their grades. Isn't it significant that this expert, and whose capacity as such cannot be doubted, when asked to compare his flour with another, and say whether his flour will do the same work as this other, should shrug his shoulders and reply: "I can't answer that?" He would only commit himself to this statement, to-wit: "Mine is good, ordinary clear flour."

As we have already noted, "hard wheat clear" flour, the kind and grade stipulated in the contract, may be and is used to make bread. The flour delivered by defendants could not be used to make bread, some reputable witnesses saying it was not fit even for dusting.

We are in entire accord with the conclusions of our learned brother of the District Court upon the facts. Our appreciation of the evidence leads us inevitably to the same result indicated in the judgment rendered by him. The Judge, in part, says:

"Now, defendants were entitled to a fair average grade of 'clear' flour; as it was, they did not get even the lowest grade usually manufactured, but received instead an inferior article, made, it is true, under a process similar to that by which 'clear' flour is made, but entirely unfit for the use to which 'clear' flour can be put.

"I am, therefore, of opinion that they are entitled to some relief; the measure of their damages, however, is not the difference in market price, but that between the price at which the flour might have been sold if up to grade and the price at which it actually was sold.

"This difference is equal to Six Hundred and Twenty-five Dollars and Forty-seven Cents ($625.47), for I find that plaintiff had actually sold 551 3-7 barrels for a total price of One Thousand, Seven Hundred and Thirty-eight Dollars and Ninety-three Cents ($1,738.93), averaging Three Dollars and Fifteen Cents ($3.15) per barrel, and had a purchaser for the 138 4-7 barrels

at Three Dollars and Ten Cents ($3.10) per barrel, which would have meant Four Hundred and Twenty-nine Dollars and Fifty-seven Cents ($429.57), or a total of Two Thousand, One Hundred and Sixty-eight Dollars and Fifty Cents ($2,168.50) for the whole 690 barrels, whilst, from a statement in the record prepared by Mr. Leo, and checked over and found correct, I find that the whole shipment of 690 barrels was actually sold by plaintiff at the best prices obtainable for the total sum of One Thousand Five Hundred and Forty-three Dollars and Three Cents ($1,543.03), being, as I have said, Six Hundred and Twenty-five Dollars and Forty-seven Cents ($625.47) less than they should have obtained for it."

The crux of the case is briefly, that plaintiff was shown samples of flour represented to be of a certain kind and grade; on there representations plaintiff, shown by this record to have had no personal knowledge from inspection of the samples as to its nature and work, agreed to buy this flour, and the contract for same was reduced to writing, and its grade and kind was therein stipulated. Clearly, the written instrument, even though the flour shipped conforms to the samples, but found to be below the grade stipulated, must control. The question of sample, in that event, becomes practically, to all intents and purposes, eliminated as an issue in the case.

The judgment appealed from does substantial justice, and will not be disturbed by this Court.

It is therefore ordered, adjudged and decreed that the judgment of the District Court be and it is hereby affirmed, defendant to pay all costs.

June 8, 1908.

Rehearing refused June 27, 1908.